Our next case is Watkins v. Mohan, Appeal No. 24-1151. Ms. Brichard, whenever you're ready. Good morning, Your Honors, and may it please the Court, Kendall Burchard on behalf of Appellant Mr. Jordan Watkins. This Court should reverse the District Court's dismissal of Mr. Watkins' complaint for two reasons. First, Mr. Watkins' Eighth Amendment deliberate indifference claim arises within an existing Bivens context. What's the limit? What's the limit to Carlson? The limit to Carlson, insofar as— Well, it seems to me that the argument is because he makes an Eighth Amendment deliberate indifference claim, that's it. Your argument is he survives under Carlson. There is no limit. That's not correct, Your Honor. So— What's the limit? I would point this Court to Snowden, and in Snowden it discussed how the Court's inquiry at this stage is meaningful differences, and whether there are any meaningful differences from Carlson. Now, if there were a national security implication to Mr. Watkins' case, that would be a meaningful difference. That would distinguish it. But aren't there meaningful differences between emergent care, acute care, long-term care? No, Your Honor. There's no—I mean, like, compare it to the Bivens context. In the Bivens context, we have a lot of courts that—look, the Supreme Court is very clear, right? They do not want to expand these claims. They do not. And in the Bivens context, we have a lot more cases where we're saying things like, well, if it's a different defendant, if it's a different defendant holds a different position within the agency. Very seemingly small differences. In Carlson, we have clear emergent care, and results in, I think, the death of an inmate. Here we have acute care in a transitory facility, the MCC, and that's—if that's not a meaningful difference, what is a meaningful difference when it comes to health care? So as this Court said in Snowden, what is meaningful is a legal and factual distinction that implicates the separation of powers calculus, such that it wasn't the same in the underlying case. The nature and severity— But what does that mean in practice that's just not to the eye of the beholder? The nature and severity of the inmate's condition and the overall outcomes—overall health outcomes, rather, have no bearing on the separation of powers. So the Eleventh Circuit is just wrong when they say that it does. Yes, Your Honor. Well, Your Honor, the Eleventh Circuit is inconsistent with this Court's reasoning in Snowden. So there are two errors with— Well, I'm not sure about that. I mean, Snowden, we set out sort of the tried and true principles here of the two-step framework, and then Snowden just applies that framework to the facts at issue in that case and says there's no meaningful difference between a hotel or a home or a warrant and no warrant. The question was whether there were sufficient allegations of excessive force during an arrest, a discrete moment in time in arrest. I'd look— Go ahead. Your Honor, I'd like to point you to that next sentence in Snowden. So in Snowden— The number of officers present, is that what you're talking about? Yes. So that's the calculus that plays here with the nature and severity of the underlying— Yeah, it doesn't involve a different class of defendant, but here you're always going to make a claim against the doctor. I mean, it seems like, you know, in Snowden we say an arrest is a discrete moment in time. The arrest happens. It doesn't drag out over a period of months. But medical care can. Medical can carry—you're saying there's no difference between Carlson, which is an emergent situation that happens basically overnight, and long-term care, which could stretch out over a period of two or three years, let's say, under your analysis, a plaintiff would still be able to bring Bivens' claim under Carlson and the Eighth Amendment. The timing consideration does not matter because it is not a meaningful difference under this court's analysis in Snowden. So as this court articulated in Snowden— Well, where does Snowden say that timing isn't meaningful? So Your Honor, the closest analogy here is the number of officers present. The question is whether that cuts to the merits of the argument, whether the force applied was reasonable, and the question of how many officers would be there answers that question. So here, the question about timing, the question about the nature and the severity of the inmate's condition, that all cuts to the merits of the deliberate indifference claim. What we're answering here is whether Mr. Watkins has sufficiently alleged facts to state a claim under Carlson, and he has, in fact. Can I ask you a question about the FTCA, the timing issue? Yes, Your Honor. Here's my question. If we take—I added up the days, and if we take the facts as you've alleged, it's exactly true. He doesn't receive notice of the complaint, and so we add 37 days, and then he's in quarantine, so we add eight days, and then he's back in quarantine, we add two days. That gets you, by my calculation, to March 18th, 2021, and let's say he filed the suit on March 24, 2021. What's your argument for those six days between March 18th and March 24th? Under this court's decision in SOCHA, all of the relevant facts need to be taken into consideration in an equitable tolling analysis. So here, we've lost facts in the record about what the circumstances were in the prison, what sort of COVID conditions were in place, which ones personally impacted him, and all of that could be cured were this court to remand for further factual development. My understanding from speaking with Mr. Watkins is there were several constraints placed on library resources. That was also an issue in SOCHA. In SOCHA, the inmate was without access to the library because of a segregated status and had other constraints on his ability to file. All of that could be sussed out on remand before the district court. Is it correct that on equitable tolling, there is ultimately, at least to some degree, a discretionary call by the district judge? Your Honor, we argue it is a novo standard here because the district court ruled without the benefit of a full factual record. Let's take it one step at a time. Suppose a full factual record. Does the district judge have some discretion, equitable discretion, in evaluating reasonable diligence? Yes, Your Honor. Okay. I understand your position to be here, however, that the district judge actually was wrong as a matter of fact as to both the starting date and the ending date for the relevant period for equitable tolling. Is that right? Yes, Your Honor. To the extent discretion was exercised, it would have been exercised on the basis of mistaken assumptions. That's correct, Your Honor, because the district court lacked a full factual record. That's consistent with this court's general admonition that district courts should not rule on equitable tolling defenses and statute of limitations defenses absent a full factual record. Could I go back for a moment to the Bivens question? Could we talk a little bit, one subject that's come up in these cases is the ARP, the Bureau of Prisons Administrative Program. What can you tell us about that and its relevance here, whether it's Step 1 or Step 2 of the, what I'm tempted to call the post-Bivens regime? It is not relevant here, Your Honor, because this case can be decided at Step 1. Much like Snowden, this Mr. Watkins case has no meaningful differences from Carlson, and because it has no meaningful differences, this court need not proceed on to Step 2. The question of the ARP is relevant to Step 2 analysis alone. As this court in Snowden footnote 4 suggests, and in Sargent, this court simply analyzed the ARP and its significance in Step 2, which this court need not reach. If we were to reach it, I understand the Supreme Court has told us to look at alternative remedial programs. What remedies are available to a prisoner under the ARP? Under the ARP, there is injunctive relief available, but a damages remedy is not allowed under the ARP. So, that is only available through Bivens action. Thank you. And as even Bivens itself made clear in situations like this, its damages were nothing. So, Mr. Watkins would be without any sort of relief for his deliberate indifference claim should there be no path forward here. Could I ask you, where is he now? Mr. Watkins has been released. He is living in a halfway house in Chicago.  But I was a little confused by just the sequence of state and federal facilities he was in at the relevant times here. Yes, Your Honor. He was transferred several times. He is now no longer incarcerated, and he stands ready and in a very good position to introduce additional evidence to the District Court on remand to support his reasonable diligence and to show the extraordinary circumstances he faced while he was attempting to file this most recent suit. Thank you. So, Your Honors, I'd like to say a little bit more about the lack of meaningful differences here from Carlson. In particular, Judge Hershey mentioned that the Abbasi factors and things that the Supreme Court's analysis include the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, and the extent of judicial guidance to instruct officers on an appropriate response. And here, at least, the officers are of the same rank. The constitutional right at issue is the exact same. These are both Eighth Amendment deliberate indifference claims. The generality or specificity of the official action is also the same. And the extent of judicial guidance now is even more robust than it was when Carlson was decided. In the 1983 context, and as Your Honors, I think . . . I agree with all that. I think the big issue is the nature and extent of the injuries. Yes, Your Honor. That's the big issue. And are we going to extend Carlson to say nature and extent of the injuries don't matter? And it could be three years of long-term care, and Carlson still applies. Your Honor, those are not meaningful differences insofar as they don't impact the separation of powers analysis. But they are in Bivens' context. The nature and the manner of the arrest in the Bivens' context is very relevant. We have circuit case after circuit case that says that. I mean, the Fifth Circuit in Olivia v. Navarro, a recent case, said, you know, use a metal detector at the Veterans Affairs Hospital and wrestle the plaintiff to the ground. It's a different context than Bivens'. Your Honor, I would direct the Court's attention to both Guantanamo Bay and Stander after . . . out of the Ninth Circuit. In both of those cases, and even in the Fifth Circuit's decision in Vaughan, each of those courts held that the nature and severity of the claim was not a meaningful difference in the Bivens' analysis because the nature and severity of the underlying condition . . . And so we have a split on that, right? I mean, we're going to have to decide what side of the split we're on, whether we're going to go with the Ninth on claims like Bivens' or we're going to go with the Eleventh. Your Honor, I would direct the Court's attention to Snowden. I do think Snowden has solved that and has dictated the Court's result here. The nature and severity of the underlying condition are not meaningful differences in the Bivens' analysis, and because they are not meaningful differences and don't otherwise impact the separation of powers calculus, they cut to the merits of the underlying claim rather than whether or not there's a Bivens' cause of action available here. And if there are no further questions, I'll resort to the remainder of my time shortly. Thank you. Mr. Cooney. Good morning, Your Honors, and may it please the Court, Counsel. Two things I want to flag for the Court's attention just before I start. First, this Court is going to hear argument in another Bivens' case next week that my office is also arguing, so we wanted to highlight that that other case raises a lot of the same issues that we're talking about. Is that an Eighth Amendment case? That's Brooks v. Richardson. That's 24, 1651. Is that an Eighth Amendment case? Yes, it is. Medical? Yes. Okay. And then secondly, I'll just briefly mention, I think we raised a qualified immunity issue in our brief. We think appellants have the better argument on that, and so we're not going to argue that as a reason that this Court should affirm here today. I think Your Honor is right to pick up on this Bivens' question one, whether Watkins' claim arises in the same context as a previous Bivens' case. The Supreme Court has been very clear that the very first consideration as to whether a case arises in a new context is the constitutional right at issue. And here, Mr. Watkins' claim arises under the Fifth Amendment up until the point at which he's convicted, which is the majority of his claim. Is there any doubt that he has an Eighth Amendment claim here? Well, his Eighth Amendment claim would depend on satisfying the Abbasi and Egbert analysis. But he is alleging an Eighth Amendment violation after conviction, correct? He does. So the fact that he has an extra claim should distinguish this and defeat the part that looks a lot like Carlson? No Your Honor. I don't think so either. My point is only that the Fifth Amendment claim arises under a different context for that reason, and that his Eighth Amendment claim only covers an 11-day period when he was convicted and before he was transferred out of Dr. Mohan's care and away from the MCC. So to the extent we're talking about a claim here at all, it's an 11-day period. Eleven days of agonizing pain, right? Eleven days of pain that his case talks about pain that stretched over a period of months, You agree that our case law says that a day or even hours of unnecessary pain can be actionable? Can be, yes. In order to be actionable in this circumstance, Mr. Watkins would have to show that his case arises in the same context as Carlson, and I don't think that's the case for the reasons we state in our brief. First of all, Your Honor talked a great deal about nature and extent of the injury. I think the other important thing to think about here is the context of being a pretrial facility, the context in which the injury arises. Mr. Watkins is awaiting sentencing. He's awaiting being transferred to a facility where he's going to serve a term of years. He's also awaiting transfer with handoffs to state facilities. All of that brings implications for how the BOP has to manage his care. If he's going to be sent off-site for a procedure, there are security implications that go along there. There's scheduling implications. If the outside facility can't see him for some reason, or if there are resource constraints on what the facility is able to provide, those are different considerations than what Carlson was dealing with, which was, as Your Honor pointed out, a discrete single incident where the care that needed to be provided in that moment was clear. I don't know that it's- Let me ask you, there's been this discussion about the nature and extent of the injury. I take it you're not arguing that Carlson is limited to plaintiffs who died? We are not, Your Honor. Good. Thank you. I think the nature, again, what the plaintiff argues as this is the type of my injury is not the full extent of the context in which that injury arises. I think if Your Honor looks at the difference between, say, Bivens and Egbert, which are both Fourth Amendment cases, both excessive force cases in a seizure context, the differences that the Supreme Court found that were meaningful there were no more significant than the differences that exist here between Mr. Watkins' case and Carlson. The differences do not need to be ... They need to be meaningful in that they- You don't think the international dimension of Egbert was significant? Well, the international aspect of Egbert was significant, and I think it was significant in the same way that the MCC being a pretrial facility, the MCC having to send somebody, to schedule somebody off-site for a follow-up visit is different from somebody who is experiencing a discrete issue. I think once you turn to, you know, recognizing that this does arise in a new context, you're in this Egbert and Abbasi Step 2, are there special factors that counsel hesitation? And here, you know, I think that the Sargent case is pretty clear that the PLRA and the Administrative Remedy Program, Sargent uses the language, it's unavoidable in the wake of Egbert, that that program is evidence that the executive branch and the legislative branch have spoken to this issue. They've provided an avenue of redress. It's not- What's the redress under the ARP? It's injunctive relief, Your Honor. Which would do what good? Well- We're looking for remedial programs. It would be incomplete in this circumstance. It would be incomplete in a situation- It would be meaningless in this situation. I don't think it would be meaningless insofar as, I mean, he has that avenue to raise redresses in the moment. He can follow the steps to fill out the necessary grievances and elevate it through the system. And it is true, he is a pretrial detainee. He does not know how much longer he is going to be at the MCC. But he's not without an avenue for raising issues about his confinement. He's not being locked away- The ARP has a 20-day time, right, to file? Yes. And within 20 days here, the plaintiff was gone from the MCC, correct? Not within 20 days of when he first complained about his surgery, no. I mean, he complains about his surgery in June 15th, three days after his initial surgery. And so, you know, he has an administrative process that exists there. The Supreme Court has said that is, whether that is- Is it meaningful, counsel, that Sargent distinguished its context from Carlson? In this respect. In what respect, Your Honor? Well, if you recall, Sargent was- The question, one question in Carlson was whether the failure to protect claim under the Eighth Amendment was within the Carlson or the Farmer against Brennan context. And the majority in Sargent said, we don't want to talk about Farmer because that was taken for granted. But let's talk about Carlson, where the Supreme Court expressly authorized. And this failure to protect context is different from the medical care. So I don't know how helpful Sargent is on this particular score. Well, Sargent does not stand for the proposition that medical care cases are actionable under the Eighth Amendment. It's- Sargent wasn't dealing with a medical context.  Sargent acknowledges that that is- that medical care was at issue in Carlson. But just like it's not sufficient to say Bivens is about Fourth Amendment search and seizure, if you have Fourth Amendment seizure, that's a green light. It's not- I don't think- it skips too much of the analysis to say Carlson is about medical care in a prison. If you have a medical claim, you're good to go. I'm not suggesting that Sargent said that much. I'm saying that what Carlson- that what Sargent had to say about other topics in this- under Bivens is not translatable automatically from the failure to protect context to the medical care context. To the extent that there are specific things that go to failure to protect, I think it's fair to say we shouldn't- we shouldn't talk about medical care when we're really- when we're talking about- we're using failure to protect. Why don't you just ask us to- plant the seed here to say this is the case where the court ought to overrule Carlson and Bivens altogether. I don't think that that's- that's not what we're asking the court to do. Carlson, you know, is good law. It exists. But the Supreme Court has steadily narrowed its application. And it's been- case after case has said that the, you know, the 11th Circuit calls Bivens a cause of action that's on the endangered species list. And I think a fair reading of- Left us to carry out the extinction? No, I don't think so, Your Honor. I think that there are cases in, for example, in the 10th Circuit, in the Silva case, that have, you know, they look at Egbert and they say Egbert asks us to ask one question and there's only one answer to that one question. Is Congress better equipped to do this than the courts? The answer is always yes, therefore there's no case. That's not our argument here and we're not asking the court to do that. We're saying look at the context that Carlson arises in. Look at the considerations that were at play at Carlson and note how they are meaningfully different in ways that might alter the policy balance that justified the action in Carlson. And so that this case does not clear the bar at step one. It's not enough like Carlson, you have to go to step two. And step two is an exceedingly narrow way in which to bring a cause of action. If I can turn to the FTCA claim just briefly, I would note that the district court provided Mr. Watkins every benefit of the doubt in his claim at the trial stage, at the motion to dismiss stage, on his equitable tolling argument. Everybody acknowledges that Mr. Watkins' second lawsuit was late. The only question is whether the statute of limitations should be equitably tolled. Every argument that he offered to the court, every argument about why he was in quarantine, what the effect of quarantine was, when he learned about either the dismissal of his case or when he was able to file a new one, the district court credited. I think appellant's argument that we should be remanded for a factual investigation here might have some merit if we disputed things that Mr. Watkins said in the district court, if there had been an actual conflict about what was the significance of being in quarantine. But that's not what happened. The district court said, I will credit everything Mr. Watkins says, even though it's unsupported by an affidavit, even though his counsel is telling me these are what the facts are. He already had a complaint. If we're in the land of arguing things that aren't in the record, he already had a complaint that had been dismissed. All he had to do was refile it. But more than that, suppose that his first case had been dismissed well after the six months had lapsed, the case was fully late. I don't think this court would hold that he gets more time to file a second lawsuit, that we just come up with an amount of equitable tolling time that we think he's entitled to. His remedy, when his first case was dismissed, was a move for reconsideration or an appeal. If he didn't learn about the dismissal of his case until it was too late, he has arguments that he could have made in that context. But he had a timely case. He was in a position to litigate it, and it was dismissed. That's unfortunate for him. But it's not a reason to equitably toll the statute of limitations to allow him to litigate a second case. So can you remind me why his first case was dismissed? His first case was dismissed for failure to comply with IFP. Ah, yeah, yeah. Thanks. He was issued an order by the previous judge that said, your IFP filings to date are deficient. Here's why they're deficient. One, two, three. You need to complete this, this, this. And then the court ordered him to receive a blank IFP form and to try again and gave him a period of time to do that. If the court has no other questions, we ask that the judgment be affirmed. Thank you, Mr. Kline. Thank you. Thank you, Your Honors. I have a few points both on the Bivens argument and the FTCA argument. To start with the FTCA, just very briefly, the assertion that he already had a complaint and could have just refiled it is completely unsupported, especially in the COVID conditions that Mr. Watkins was operating within. He lacked access to his personal papers. There's no telling where that initial complaint would have been. And it's also the case that he had a very clear path about where to go. After his administrative remedies were denied, he knew he needed to file suit. After his initial complaint was dismissed for failure to follow IFP, he really didn't know what to do, especially since that dismissal was without prejudice. It wasn't clear that he needed to appeal that. I had to research it as a lawyer, and he was uncounseled this entire time. So I would just like to note that for the record on the FTCA claim. As far as Bivens, this case presents no greater issue of prison administration or policy that wasn't already at issue in Carlson. And Judge Hamilton, you pointed to Sargent earlier and how Sargent distinguished Carlson from the facts at issue there. And as this court described in Carlson, Carlson involved both keeping a prisoner in a subpar medical facility and delaying his transfer to a hospital. And that's reminiscent of the claims at issue here. So Mr. Watkins is alleging nothing greater than what was already at issue in Carlson and what the Supreme Court said was not an undue infringement onto prison administration. I'd also like to briefly address one of the concerns that Judge Kirsch had on the difference between emergent and acute care. As Snowden talked about, there was no distinction between the home or a hotel in the Fourth Amendment context. But that's because the focus was on arrest. Yes, Your Honor. Here the focus is on care. Yes, Your Honor. But those allegations of care, again, are no different than what was at issue in Carlson as this court's description of Carlson and Sargent really makes clear. Again, the emphasis on keeping a prisoner in a subpar medical facility or delaying his transfer to a hospital, that all strikes at the heart of this complaint and Mr. Watkins' circumstances as well. And the Fifth Circuit in Vaughan explained that even though the plaintiff did not die, his need for medical attention did not relate to asthma and he had access to the administrative remedy process, his case still did not arise in a new context within Carlson because there were no meaningful differences from Carlson. Okay, thank you. Thank you, Your Honor. Thank you to both counsel. The case will be taken under advisement.